PITE DUNCAN, LLP
STEVEN W. PITE (NV Bar #008226)
EDDIE R. JIMENEZ (NV Bar #10376)
525 E. Main Street
P.O. Box 12289
El Cajon, CA 92022-2289
Telephone: (702) 413-9692
Facsimile: (619) 590-1385
E-mail:  ecfnvb@piteduncan.com

ABRAMS & TANKO, LLLP
MICHELLE L. ABRAMS (NV Bar #005565)
3085 S. Jones Blvd., Suite C
Las Vegas, NV 89146

Attorneys for Secured Creditor MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR PLAZA HOME MORTGAGE, INC., its successors and/or assigns

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>JOSHUA SCOTT MITCHELL AND STEPHANIE JUDITH MITCHELL,<br><br>Debtor(s). | Bankruptcy Case No. BK-S-07-16226-LBR<br>Chapter 7<br><br>MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE'S COMMON BRIEF IN RESPONSE TO MATTERS COURT IDENTIFIED FOR JOINT HEARING<br><br>Date: June 9, 2008<br>Time: 1:30 p.m. |

In the Court's April 29, 2008 Order, the Court requested Mortgage Electronic Registration Systems, Inc. ("MERS") file a common brief addressing its standing to seek relief from stay independent of the lender as well as its ability to authenticate documents related to the motion. In response, MERS has retained corporate counsel (Reed Smith LLP)[1] to work in conjunction with Pite Duncan, LLP, and the other named entities in the Court's Order to review

---

[1] Reed Smith is entering an appearance and filing the appropriate papers in connection therewith. In light of the Court's order that the common brief be filed in this Mitchell case, bankruptcy counsel handling that matter are filing this common brief for all.

the 27 cases on matter for joint hearing, analyze the issues the Court identified, and apply the common analysis to the facts and circumstances of the 27 cases.

MERS accordingly will begin by identifying the principles that confer standing on it as a general matter to move for relief, the procedures it has adopted to implement those standing principles, and the application of those procedures and principles in the particular cases identified for joint hearing.

## I. MERS IS A REAL PARTY IN INTEREST ENTITLED TO MOVE FOR RELIEF FROM THE AUTOMATIC STAY

To understand the source of MERS standing, it is helpful to first summarize what MERS does.[2]

### A. Background - MERS: An Innovative System Designed To Help Lower The Cost And Increase The Availability Of Home Loans By Efficiently Tracking Transactions In The Secondary Mortgage Market While Satisfying Real Property Laws And Related Standing Rules

#### 1. The Residential Mortgage Market

MERS is a company formed to play a vital role in a federally-established free market system that is designed to reduce the costs of and increase the availability of funding for home loans. When a mortgage lender lends money to a home buyer, it obtains in exchange both a promissory note, which is a negotiable instrument, and also a security instrument in the underlying property. The security instrument usually takes one of two forms, either a "mortgage," with the borrower as the "mortgagor" and the lender or its nominee as the "mortgagee," or in this case, a "deed of trust," with the borrower as the "trustor" and the lender or its nominee as the "beneficiary." To provide notice of the lien to the world at large, the deed

---

[2] The background facts that are set out in this section are drawn from either the following sources or others identified in footnotes: *Matter of Merscorp, Inc.*, 24 A.D.3d 673, 673-75 (2005), *leave to appeal granted*, 6 N.Y.3d 712 (2006); *Opinion of Michigan Attorney General No. 7116,* 2002 Mich. AG Lexis 19, at *1-6 (2002); Arnold, *Yes, There is Life on MERS*, 11 prob. & Prop. 32, 32-36 (July-Aug. 1997); *Slesinger & McLaughlin, Mortgage Electronic Registration Systems*, 31 Idaho L. Rev. 805-805-18 (1995); *In re Huggins*, 137 B.R. 180 (Dec. 14, 2006).

of trust is recorded in the appropriate local land records office.[3] In almost all instances, however, the mortgage lender sells the promissory note into the secondary mortgage market, most often to one of the government or government-sponsored entities created by Congress to purchase residential mortgage loans.[4] In turn, these entities resell the promissory note into a tertiary mortgage-backed securities market, usually as part of a bundle of promissory notes held in trust for investors.[5] As a result, the owners of these promissory notes may be thousands of people simultaneously, whose identities change as the notes are sold and resold and as investors buy and sell shares in the mortgage-backed securities.[6]

Due to the secondary and tertiary mortgage markets, the mortgage lender can sell the promissory note obtained from the borrower and then make the funds obtained from the sale of the note available to additional borrowers for the purchase of homes. Congress created the government sponsored entities, Ginnie Mae, Fannie Mae, and Freddie Mac for this very purpose of increasing the availability of funds for home ownership.[7]

### 2. The Creation of MERS

In 1993, the Mortgage Bankers Association, Ginnie Mae, Fannie Mae, Freddie Mac, and others in the real estate finance industry created an electronic registration and tracking system into what is now called the MERS® System-similar to the one successfully used by the Depository Trust Company for the securities industry.[8] The purpose of the MERS® System is to track both beneficial ownership interests in, and servicing rights to, mortgage loans as they change hands throughout the life of the loan. This tracking reduces the costs, errors, and delays

---

[3] See Arnold, *Yes, There Is Life on MERS*, 11 Prob. & Prop. at 34-35.

[4] *See id.*

[5] *See id.*

[6] *Id*. at 34; Slesinger, Mortgage Electronic Registration System, 31 Idaho L. Rev. at 808.

[7] *See* 12 U.S.C. § 1451, 1716; *see also* 12 U.S.C. § 1451-59, 1716-23 *et seq.* (creating the Government National Mortgage Association ("Ginnie Mae"), Federal National Mortgage Association ("Fannie Mae") and Federal Home Loan Mortgage Corporation ("Freddie Mac").

[8] Arnold, *Yes, There Is Life on MERS*, 11 Prob. 7 Prop. at 33; *See* Slesinger & McLaughlin, Mortgage Electronic Registration System, 31 Idaho L. Rev. at 810-11.

associated with frequent and multiple assignments of the mortgage lien interest when servicing rights or beneficial ownership interests were sold.[9] Prior to the establishment of the MERS® System, the procedures used for recording assignments to accommodate the transfer of servicing rights to, or beneficial interest in, mortgage loans had proved to be a "terribly cumbersome, paper-intensive, error-prone, and therefore costly" process.[10] Almost every entity involved in home lending or servicing is a member of MERS.[11]

### 3. How MERS Works

Upon the purchase of a home, and as happened in the present case, the borrowers signed a deed of trust that, among other things: (1) names the borrowers as the trustor, and includes his or her name; (2) names MERS as the beneficiary, as nominee, for the mortgage lender and its successors and assigns; (3) includes MERS address and its toll-free telephone number; (4) describes the secured real property; (5) refers to the borrower's promissory note in favor of the mortgage lender; and (6) expressly states that MERS holds legal title and authorizes MERS, with the express understanding and agreement of the borrower, to exercise the rights of the mortgage lender for whom it holds legal title including but not limited to, the right to foreclose and sell the Property.[12] The deed of trust is then recorded in the local land records with MERS as the named beneficiary.

MERS Members enter into a contract with MERSCORP, Inc., the operating company that owns and operates the MERS® System, to electronically register and track beneficial ownership interests and servicing rights in mortgage loans.[13] MERS Members contractually

---

[9] Arnold, *Yes, There Is Life on MERS*, 11 Prob. 7 Prop. at 33; (MERS is the result of an industry effort to reduce the need for mortgage assignments in the residential mortgage market and thus increase efficiency and reduce costs).

[10] *See id*. at 33-34; Selsinger. Mortgage Electronic Registration System, 31 Idaho L. Rev. at 808.

[11] In addition to Ginnie Mae, Fannie Mae, and Freddie Mac, MERS members include many national and international lenders and many of the largest and most well-known title associations and title insurers. A complete list of MERS members is available on MERS' website at www.mersinc.org.

[12] See, e.g., deeds of trust attached as exhibits to evidence submitted with this brief.

[13] *Id*. at 33.

agree to appoint MERS, which MERSCORP wholly owns, to act as their common agent, or nominee, and to name MERS as the lienholder of record in a nominee capacity on all recorded security instruments relating to loans registered on the MERS® System. When a promissory note is sold by the original lender to others, the various sales of the Notes are tracked on the MERS® System. Local recording offices historically did not and currently do not record the transfer of promissory note ownership. Beneficial ownership interests in the mortgage loan are sold by endorsement and delivery of the promissory note. The promissory note is the negotiable, intangible asset, which has value to financial institutions and investors and like other promissory notes, is negotiated by endorsements and delivery of the same.

Once MERS becomes the beneficiary of record as nominee, it remains such when beneficial ownership interests in the promissory note or servicing rights are transferred in the secondary mortgage market by one MERS Member to another, and it tracks such transfers electronically on the MERS® System.[14] The homeowner/borrower is notified by both the selling MERS Member and buying MERS Member (under the Truth in Lending Act, 12 U.S.C. § 2601 *et seq.*) of any transfer of servicing rights. The recorded deed of trust thereby provides public notice of the encumbrance to the underlying real property, without the need to record any assignment.[15] In doing so, MERS keeps the chain of title clear and ascertainable, without the worry of unrecorded, incorrect, or intervening assignments.[16]

In making the name of the servicer publicly available, the MERS® System also fills another information void. Local recording officers historically did not and currently do not record the transfer of servicing rights.[17] Servicing rights are sold by a purchase sale agreement, which is a non-recordable contractual right. Servicing rights are contract rights pursuant to which mortgage servicers agree to perform various functions in connection with a loan, including the collection of payments, the tracking of insurance and real estate taxes, and

---

[14] Arnold, Yes, There is Life on MERS, 11 Prob. & Prop. at 35.

[15] *Id.* at 35-36.

[16] *Id.*

[17] *See id.* at 34.

remittance of payments to investors for which they are paid a fee that comes out of the interest payments made pursuant to the note. Knowing the identity of the current servicer enables consumers, lenders, servicers, and title insurers to arrange for consolidations, modifications, releases, or discharges of liens in a timely and reliable manner.[18] MERS, as beneficiary of record, then executes such consolidations, modifications, releases, or discharges as the nominee for lender.[19] It is this current and easily accessible information that assists borrowers, title insurers, and lenders to promote low-cost home ownership.[20]

As long as the sale of the note involves a member of MERS, MERS remains the beneficiary of record on the deed of trust and continues to act as nominee for the new beneficial owner. This relationship is memorialized in the original security interest to which the borrower is a party, as well as in the MERS membership agreements. If a member is no longer involved with the loan after it is sold, an assignment of the lien from MERS to the non-MERS member is recorded in the county where the real property is located, and the mortgage is deactivated from the MERS® System.

As of today, Members have registered more than 55 million mortgages and deeds of trust on the MERS® System.

### 4.  MERS Procedure For Foreclosures When MERS Is The Foreclosing Entity

Pursuant to the MERS Membership agreement, MERS authorizes its Members to have "MERS Certifying Officers" who have authority delegated by MERS to perform specified actions in MERS name with respect to the loans. For example, Rule 8 of the MERS Membership Agreement specifies how MERS can pursue a foreclosure action in MERS name, should the Member elect to do so.[21]

---

[18] *See id*.

[19] *See id.*

[20] The borrower may look up the servicer's name and contact information for their MERS held lien using MERS' Servicer ID which is found on MERS website http://www.wers-servicerid.org/. The borrower can search by either the 18-digit Mortgage Identification Number (MIN) stated on recorded instrument naming MERS as the mortgagee or beneficiary or by putting in their name and property address.

[21] In pertinent part, Rule 8 states:

The specified procedure is designed to comply with well-established standards for perfecting standing in foreclosure actions. Thus, in judicial foreclosure states, the Member must ensure that MERS is a holder of the note (by endorsing the note in blank and delivering it to a MERS Certifying Officer). In other states, such as non-judicial foreclosure states, the Member may proceed in MERS name pursuant to the authority granted in the security instrument.

This delegation of authority to the MERS Certifying Officer is also what permits MERS to authenticate documents related to motions for relief from stay. This MERS Certifying

---

*Section 1.* (a) With respect to each mortgage loan for which Mortgage Electronic Registration Systems, Inc. is the mortgagee of record, the beneficial owner of such mortgage loan or its servicer shall determine whether foreclosure proceedings with respect to such mortgage loan shall be conducted in the name of Mortgage Electronic Registration Systems, Inc., the name of the servicer, or the name of a different party to be designated by the beneficial owner. The Member servicing a mortgage loan registered on the MERS® System shall be responsible for processing foreclosures in accordance with the applicable agreements between such Member and the beneficial owner of such mortgage loan.

\* \* \* \*

(d) In the event that the beneficial owner or its designated servicer determines that foreclosure proceedings shall be conducted in the name of a party other than Mortgage Electronic Registration Systems, Inc., the servicer designated on the MERS® System shall cause to be made an assignment of the mortgage from Mortgage Electronic Registration Systems, Inc. to the person designated by the beneficial owner, and such beneficial owner shall pay all recording costs in connection therewith.

*Section 2*: (a) If a Member chooses to conduct foreclosures in the name of Mortgage Electronic Registration Systems, Inc., the note must be endorsed in blank and in possession of one of the Member's MERS certifying officers. If the investor so allows, then MERS can be designated as the note-holder.

    (i) The Member shall not plead MERS as the note-owner in any foreclosure document; including but not limited to, the foreclosure complaint.
    (ii) The Member shall not plead MERS as a co-plaintiff in a foreclosure action.
    (iii) If the note is lost or cannot be located, the Member shall not commence a foreclosure action in the name of MERS, but rather must assign the mortgage out of MERS.

(b) In non-judicial foreclosure states, if the Member chooses to foreclose in MERS name under the power of sale provision in the security instrument and is not seeking a deficiency judgment, then the note does not need to be in the possession of the Member's MERS Certifying Officer when commencing the foreclosure action; provided, however, that under no circumstances may the Member allege that the note is in their possession unless it so possesses.

Officer who is familiar with the records of the lender or servicer and has reviewed same may authenticate the documents and is also authorized to speak for MERS--under the conditions specified in the Membership Agreement--and may thus authenticate documents in motions filed under MERS name.

### B. Under Its Established Procedures, MERS Has Standing To Foreclose As The Named Beneficiary On The Deed of Trust, Whom The Borrower Has Agreed May Exercise The Right to Foreclose

Courts around the country have considered whether MERS is a real party in interest with standing to move for relief from the automatic stay, or the closely related question of whether it has standing to foreclose. The "clear majority" have held that it has standing. *Mortgage Electronic Registration Sys., Inc. v. Revoredo*, 955 So.2d 33, 34 (Fl. 2007); *Mortgage Electronic Registration Sys. Inc. v. Coakley*, 41 AD3d 674 (NY App. 2007); *In re Huggins*, 357 B.R. 180 (Bank. D. Mass. 2006); *In re Sina*, No A06-200, 2006 WL 2729544 (Minn.Ct.App. Sept. 26, 2006)(unpublished); *Mortgage Elec. Registration Sys., Inc. v. Ventura*, No CV 054003168S, 2006 WL 1230265 (Conn.Super.Ct. April 20, 2006) (unpublished); *Mortgage Elec. Registration Sys., Inc. v. Leslie*, No. CV044001051, 2005 WL 1433922 (Conn.Super.Ct. May 25, 2005)(unpublished).

In *Huggins*, the debtor opposed MERS' motion for relief from the automatic stay on the ground that "MERS, not having property or ownership interest in the rights of Spectrum, is not the real party in interest, consequently cannot collect on the Note or enforce the Mortgage outside bankruptcy, and thus lacks standing in bankruptcy to seek relief to do so." 357 B.R. at 183. After reviewing the facts concerning MERS' role in a mortgage transactions, the court identified four reasons why MERS has standing. "First, MERS is acting as nominee for Spectrum, which holds the Note,..." *Id.* "Second, MERS is the record mortgagee under the Mortgage with the powers expressly there therein set forth, including the power of sale..." *Id.* Third, the Massachusetts foreclosure statutes, "expressly authorizes the exercise of sale powers by a mortgagee or person authorized to sell, precisely the position occupied by MERS." *Id.*

Finally, "a denial of MERS' foreclosure right as a mortgagee would lead to anomalous and perhaps inequitable results, to wit, if MERS cannot foreclosure though named as mortgagee,

1  then either Spectrum can foreclose though not named a mortgagee or no one can foreclose,
2  outcomes not reasonably or demonstrably intended by the parties." *Id.*

3        MERS established procedure for foreclosures when MERS is the foreclosing entity
4  tracks each of these points. In judicial foreclosure states, MERS requires that it be the note
5  holder when MERS is the foreclosing party. In non-judicial foreclosure states, it must at least
6  be the record beneficiary under the Deed of Trust, with the powers expressly set forth therein,
7  including the power of foreclosure; in addition, as noted, it may become the holder on the note
8  under some circumstances. This procedure fully establishes standing under this Court's rules
9  and Nevada law.

10        A successful motion to lift the stay is not the final objective or adjudication of the
11  matter, but only the start thereto. Because the final objective is foreclosure and sale of the
12  subject property, the Court looks to Nevada State law governing foreclosure to correctly
13  determine whether MERS is a real party in interest with standing to bring a motion for relief.

14        Like the Massachusetts foreclosure statute, the real party in interest rule on which the
15  Trustee relies and Nevada law expressly confer standing to sue on "a party with whom or in
16  whose name a contract has been made for another's benefit," which is precisely the position
17  MERS occupies. Fed.R.Civ.P.17(a)(1)(F); *see* Bankruptcy Rule 7017 (adopting
18  Fed.R.Civ.P.17); N.R.C.P. 17(a) ("An executor, administrator, guardian, bailee, trustee of an
19  express trust, a party with whom or in whose name a contract has been made for the benefit of
20  another, or a party authorized by statute may sue in his own name...") *Castleman v. Redford*, 61
21  Nev. 259 (1942) (plaintiff not precluded from suing in her own name by reason of the fact that
22  she was an assignee for collection only; real party in interest statute expressly authorized suit to
23  be brought by person acting as trustee for or assignee of another, even if the principal retains
24  interest in the proceeds); *Stewart and Horton Trust Account v. Autrand*, 78 Nev. 447, 375 P.2d
25  750 (Nev. 1962) (holder in due course of note endorsed in blank may enforce note); NRS
26  104.3205, subd. 2.

27  /./././
28  /././

Nev. Rev. Stat. 107.080(1) states in relevant part:

[I]f any transfer in trust of any estate in real property is made after March 29, 1927, to secure the performance of an obligation or the payment of any debt, a power of sale is hereby conferred upon the trustee to be exercised after a breach of the obligation for which the transfer is security.

Pursuant to Nev. Rev. Stat. 107.080, MERS can foreclose on the properties as a "person authorized to make the sale under the terms of the trust deed."

Indeed, the judicial recognition of MERS' standing is nothing new and follows naturally from long settled principles set forth in the Uniform Negotiable Instruments Act and the Uniform Commercial Code that entitle a nominee holder of an instrument to sue to enforce the instrument.[22]

In the reply brief in which the Trustee raised the MERS' standing issue, the Trustee, while relying on Rule 17, did not address the key provision - Rule 17(a)(1)(F). The Trustee also did not mention many of the cases that have recognized MERS' standing, and instead selectively quoted a passage in *Huggins* to suggest that *Huggins* improvidently refused to follow another case, *LaSalle Bank Nat Assn's. v. Lamy*, 12 Misc.3d 1191(A) 2006 WL

---

[22] *See, e.g., Leavings v. Mills*, 175 S.W.3d 301 (Tex. App. Houston 2004) (a "holder" of an instrument is a person entitled to enforce the instrument); *Caballero v. Wilkinson,* 367 So.2d 349 (La. 1979) (although holder of bearer note was not the owner, he could sue makers for payment); *John Davis & Co. v. Cedar Glen No. Four, Inc.*, 450 P.2d 166 (Wash. 1969) (holder of negotiable instrument may sue thereon in his own name and payment to him in due course discharges instrument; it is not necessary for holder to first establish that he has some beneficial interest in proceeds); *Hubby v. Willis Agency, Inc.*, 283 P.2d 1080, 1082 (Colo 1955) (The payee and holder of a promissory note may maintain an action thereon even if he is not the beneficial owner of the negotiable instrument sue on, even though he is only a nominal payee and the beneficial interest of equitable ownership is another person); *Stearns v. Los Angeles City School Dist.*, 244 Cal.App.2d 696, 701, 716 n.3 (1996) (company that concededly only holds record title to deed of trust as nominee for two principals was a proper party in quiet title action, and judgment in that action against the nominee bound the principal despite the fact that the principal was not a party to the action at that time); *Wick v. Cleveland Secs. Corp.*, 50 N.E2d 351, 352 (Ohio App. 1943) (A person who is a holder within the meaning of the pertinent provisions of the Negotiable Instruments Act is entitled to sue notwithstanding he is without beneficial interest and a general code provision requiring every action to be prosecuted in the name of the real party in interest); *NwNat'l Bank & Trust Co. v. Hawkins*, 286 N.W. 717 (Minn. 1939) (Even a nominal payee or title holder, although have a beneficial interest, may maintain an action on a promissory note).

22251721 (N.Y. 2006). As *Huggins* soundly explained, however, *Lamy* relied on four cases, "none of which holds that MERS as nominee mortgagee named in a recorded mortgage may not prosecute a foreclosure action on behalf of a noteholder." *Huggins*, 357 B.R. at 184. Moreover, *Lamy* denied a foreclosure action by an assignee of MERS, and did not reject an action or motion by MERS itself. "*Lamy* thus rests on a defect in the title of the assignee" and "not on a defect in the standing of MERS as nominee to foreclose on behalf of a valid holder of the mortgage note." *Huggins*, 357 B.R. at 184.[23]

Accordingly, because this case concerns whether MERS as nominee and as the named beneficiary on the deed of trust may move for relief from the automatic stay, *Lamy* is simply inapplicable and the Court should instead follow the many cases that have held that MERS has standing in this circumstance.

## II. APPLICATION OF STANDING PRINCIPLES TO CASES CALENDARED FOR JOINT HEARING

As shown, under the procedure that MERS has established for MERS to foreclose in MERS name, MERS has standing. However, in reviewing the 27 cases before the Court, MERS has been unable to confirm that its procedures were followed in all instances. Accordingly, MERS is withdrawing the motions for relief from stay in those instances where it did not receive, by the due date for this brief, evidence affirmatively demonstrating that its procedures were followed by a MERS Certifying Officer, but requests the Court recognize its standing in those instance where MERS has obtained evidence that its Rule 8 procedure for foreclosing was followed.

The 27 cases set for joint hearing can be grouped into the following 3 categories

*Cases in which the Member has certified that MERS was a holder of the note when the motion for relief from stay was filed.* In these cases, the MERS Member responsible for

---

[23] The issues surrounding the *Lamy* case were the result of procedural defects. The Judge in *Lamy* noted that the assignment from MERS to the foreclosing Plaintiff was dated after the commencement date of the foreclosure and that the note allonge was undated. These procedural defects were corrected and the case refiled. On August 15, 2007, Judge Burke signed an Order of Reference in the second *Lamy* case and citing to *Coakley*, an appellate level case, found that the Plaintiff (MERS' assignee) had sufficiently demonstrated its entitlement to the relief requested.

managing the bankruptcy case has confirmed and has furnished affidavits filed herewith that MERS via a MERS Certifying Officer, held the Note at the time the motion for relief from stay was filed. As shown above, in this circumstance, MERS has standing. The cases in this category are:

Michele Dart, BK-S-08-11007 LBR. – **exhibit A**

William Jay and Dawn M. Ziegler, BK-S-09-10718-MKN. – **exhibit B**

Lonnie Earl and Lisa Willett Hawkins, BK-S-07-13593-LBR – **exhibit C**

*Case in which the Member has furnished MERS evidence that it is the current assignee/beneficiary of the deed of trust and holder of the note.*

Gabriel Ramirez-Furiati, BK-S-08-10427-LBR. – **exhibit D**

*Cases In Which MERS Is Withdrawing The Motion For Relief From Stay Without Prejudice.*

All other cases identified in Court's April 29, 2008 order.

### III.    CONCLUSION

Under its established procedures, MERS has standing to seek relief from the stay. The implementation of those procedures in these cases, however, has not been consistent. MERS has detailed that implementation above and will withdraw the motions, without prejudice, in those instances where it has been unable to confirm compliance with its established procedure for ensuring standing to seek relief in MERS' name.

Dated: May 12, 2008

/s/ Eddie R. Jimenez
525 E. Main Street
P.O. Box 12289
El Cajon, CA 92022-2289
(702) 413-9692
NV Bar #10376
Attorney for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR CERTAIN PARTIES INCLUDED IN JOINT HEARING