**Entered on Docket**
**March 31, 2009**

_____
**Hon. Linda B. Riegle**
**United States Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re<br><br>JOSHUA & STEPHANIE MITCHELL,<br><br>                    Debtor(s). | Case No. BK-S-07-16226-LBR<br>Chapter 7<br><br>DATE:   August 19, 2008<br>TIME:   3:30 p.m. |

## MEMORANDUM OPINION

Mortgage Electronic Recording Systems, Inc. ("MERS") through various counsel has filed a number of motions to lift stay.[1] Some of the motions were filed in the name of MERS, while others have been filed in the name of MERS as the nominee for another entity. An order for joint briefing was entered because the substantially same issues were presented in the motions, and a joint hearing was held. *Mitchell (*#07-16226) has been designated as the lead case.[2] The trustee or counsel for the debtor in these cases has opposed the lift-stay motions on the

---

[1] Motions have been filed in the following cases: #07-16226, #07-016333, #07-16645, #07-17577, #07-18851, #08-10427, 08-11007, #08-11860, #07-13593, #08-10108, #08-10778, #08-12255, #07-17468, #08-11245, #08-11608, #08-11668, #08-11725, #08-11819, #08-12206, #08-12242, #08-12317, #08-12319, #08-10052, #08-10072, #08-10718, #08-11499, #07-16519. Each of the judges will enter their own orders in the matters that are assigned to them.

[2] The docket numbers mentioned in this opinion are to the *Mitchell* case unless otherwise noted.

1

grounds of standing and that MERS is not the real party in interest.

The initial response filed by MERS contained no evidentiary support. Rather it described the role of MERS and its members by relying on law review articles and the recitation of facts in other cases in other districts involving MERS. Prior to the initial argument, MERS attempted to withdraw the motions filed in all but four of the cases. MERS then filed a declaration at the court's direction explaining why the motions were withdrawn. The declaration of William Hultman was filed in *Dart*.[3] The declaration, in addition to explaining MERS' rationale for withdrawing the motions, also attached as exhibits copies of the MERS Membership Application, the MERSCorp. Inc. Rules of Membership, the MERS Procedural Manual, and the MERS Terms and Conditions of Membership.[4] The court also requested appropriate evidentiary support for the allegations concerning the relationship between MERS and the entities for whom the motions were brought. A supplemental declaration was filed in *Michell,* the lead case.[5]

As noted, MERS has attempted to withdraw all but four of its original motions, leaving only *Dart (#*08-11007), *Hawkins* (#07-13593), *Ramirez-Furiati (#*08-10427), and *Zeigler (#*08-10718). MERS admits that it failed to follow its own procedures in the motions it wants to withdraw.[6] The debtor, the chapter 13 trustee, and MERS subsequently stipulated to a lift of stay in *Ramirez-Furiati* which the court approved with the acknowledgment that the order contained no finding about MERS' standing.[7] This court will discuss the issues raised in the motions that

---

[3]*Dart* (#08-11007).

[4]Docket #47 in *Dart*.

[5]Docket #74 in *Mitchell* ("Huntman Declaration"). The Declaration also incorporated the prior declaration filed by Mr. Hultman in *Dart*. References in this memorandum to the declaration filed in *Mitchell* include the incorporated declaration and the exhibits thereto.

[6]Docket #74, Declaration of William Hultman ("Hultman Declaration"), Exhibit 1, pp. 4-5. "The fact that MERS chose to not go forward on these . . . motions was not a determination by MERS that it does not have standing to move for relief from stay." Exhibit D to that Declaration sets forth the name of the motions withdrawn and the reason for withdrawal.

[7]Docket #54 in #08-10427.

2

MERS attempts to withdraw,[8] and by this order issues its ruling in *Dart* and *Hawkins*, which are the two cases that are now pending before it.[9]

The court has advised the parties that it would consider any information contained on the MERS website at http://www.mersinc.org/ unless an objection was made. No objection has been filed by either party. The court thus takes judicial notice of the contents of the MERS website.

***WHAT IS MERS?***

MERS is a national electronic registration and tracking system that tracks the beneficial ownership interests and servicing rights in mortgage loans.[10] The MERS website says this:

> MERS is an innovative process that simplifies the way mortgage ownership and servicing rights are originated, sold and tracked. Created by the real estate finance industry, MERS eliminates the need to prepare and record assignments when trading residential and commercial mortgage loans.

William Hultman, Secretary of MERS, has testified in his Declaration that loans are registered to a "MERS Member" who has entered into the MERS Membership Agreement. MERS Members enter into a contract with MERSCORP to electronically register and track beneficial ownership interests and servicing rights in MERS registered mortgage loans.[11] MERS Members agree to appoint MERS, which MERSCORP wholly owns, to act as their common agent, or nominee, and to name MERS as the lienholder of record in a nominee capacity on all

---

[8] FED. R. BANKR. P. 9014 makes FED. R. BANKR. P. 7041 applicable to contested matters, which includes lift stay motions, and FED. R. BANKR. P. 7041 incorporates FED. R. CIV. P. 41. Under these rules, a party can voluntarily dismiss a lift-stay motion without a court order only if there is a stipulation to dismiss or the dismissal is filed *before* an opposition is filed, and neither is true here.

[9] Some cases were added to the argument calendar after the April 29, 2008 joint hearing order. Separate orders will be entered in each of those cases, which counsel agreed to continue pending a ruling in the "test case." *See* Transcript (Docket # 83) pp. 9 and 76.

[10] MERS Response, Docket # 49, p. 3.

[11] "MERS Members" are mortgage lenders and other entities. ("Membership in MERS Overview," filed with Hultman Declaration, Docket #74.)

recorded security instruments relating to the loans registered on the MERS System. When a promissory note is sold by the original lender to others, the various sales of the notes are tracked on the MERS System.[12]

Hultman goes on to say in his Declaration that once MERS becomes the beneficiary of record as nominee, it remains the beneficiary when the beneficial ownership interests in the promissory note or servicing rights are transferred by one MERS Member to another and that it tracks the transfers electronically on the MERS System. So long as the sale of the note involves a member of MERS, MERS remains the beneficiary of record on the deed of trust and continues to act as nominee for the new beneficial owner.[13]

## *STANDING*

MERS must have both constitutional and prudential standing,[14] and be the real party in interest under FED. R. CIV. P. 17,[15] in order to be entitled to lift-stay relief.

Constitutional standing under Article III requires, at a minimum, that a party must have suffered some actual or threatened injury as a result of the defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by a favorable decision. *Valley Forge Christian Coll. v. Am. United for Separation of Church and State*, 454 U.S. 464, 472 (1982)(citations and internal quotations omitted).

Beyond the Article III requirements of injury in fact, causation, and redressibility, MERS must also have prudential standing, which is judicially-created set of principles that places limits on the class of persons who may invoke the courts' powers. *See Warth v. Seldin*, 422 U.S. 490,

---

[12] Docket #74, Hultman Declaration at ¶ 3.

[13] Docket # 74, Hultman Declaration at ¶ 4.

[14] The standing doctrine "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Kowalski v. Tesmer*, 543 U.S. 125, 128-29 (2004) (quoting Warth v. Seldin, 422 U.S. 490, 498 (1975)).

[15] Stay-relief requests are governed by FED. R. BANKR. P. 4001(a)(1), to which FED. R. BANKR. P. 9014 is applicable. Rule 9014, in turn, incorporates Rule 7017, which makes FED. R. CIV. P. 17 applicable ("[a]n action must be prosecuted in the name of the real party in interest.").

499 (1975). As a prudential matter, a plaintiff must assert "his own legal interests as the real party in interest," *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004), as found in FED. R. CIV. P. 17, which provides "[a]n action must be prosecuted in the name of the real party in interest."

MERS' primary contention is that it has standing by virtue of the fact that it was named as the beneficiary under the deeds of trust and that the trustor (the maker of the note) recognized MERS could take actions of the beneficiary or that it is the nominee of the beneficiary. "In non-judicial foreclosure states, [MERS] must at least be the record beneficiary under the Deed of Trust, with the powers expressly set forth therein, including the power of foreclosure; in addition, as noted, it *may* become the holder on the note under some circumstances. This procedure fully establishes standing under this court's rules and Nevada law."[16] MERS argues in its supplemental brief: "It would be reasonable to hold that a motion that pleads MERS is the of-record beneficiary on the deed of trust is prima facie evidence of standing to move for relief from stay and contains an implied certification that MERS is able to discharge the responsibilities of a movant."[17] MERS states that the issue of standing focuses on who can foreclose and that MERS can foreclose on the properties as a "person authorized to make the sale under the terms of the trust deed.[18] (*See also*, Transcript, Docket # 83, pp. 14-15.)

MERS also argues that it has standing which follows principles set forth in the Uniform Commercial Code that entitle a nominee holder of an instrument to sue to enforce the instrument.[19] It is unclear whether MERS is arguing that it has standing in its own right, or as the agent of the entity entitled to enforce the note, or both. Compare the following arguments, all

---

[16] MERS' Response, Docket #49, p. 9 (emphasis added).

[17] Supplemental Brief of MERS, Docket # 73, p. 10.

[18] Docket #49, p. 10. However, it is not the beneficiary that is authorized to make the sale under the trust deed, it is the trustee.

[19] Docket #49, p. 10.

made in the same supplemental brief.[20] MERS argues at page 9 of the brief that "this evidence demonstrates MERS right to enforce the note as the note's 'holder.'"[21] In the same brief, at page 8, it argues "[t]his evidence further demonstrates MERS authority *to act for* the current beneficial owner of the loan or its servicer."[22] And at page 1 of the brief MERS argues this: "In the motions at issue, MERS is the agent of the original lender and its successors and assigns for defined purposes (such a relationship is termed a 'nominee.')."[23]

### *STANDING AS THE NAMED BENEFICIARY OR THE NOMINEE OF THE BENEFICIARY OR ITS ASSIGNEE*

MERS does not have standing merely because it is the alleged beneficiary under the deed of trust. It is not a beneficiary and, in any event, the mere fact that an entity is a named beneficiary of a deed of trust is insufficient to enforce the obligation.

The deed of trust attempts to name MERS as both a beneficiary and a nominee. The document first says this:

> MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument.[24]

And later it says this:

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lenders successors and assigns) and the successors and assigns of MERS.[25]

---

[20]Docket #73.

[21]Docket #73, p. 9.

[22]Docket # 73, p. 8. (Emphasis added.)

[23]Docket #73, p. 1.

[24]*In re Mitchell*, #07-16226, Motion to Lift Stay (Docket # 30), Exhibit B, p. 2, Subpart (E).

[25]*In re Mitchell*, #07-16226, Motion to Lift Stay (Docket # 30), Exhibit B, p. 3.

1    MERS' "Terms and Conditions"[26] identifies MERS' interests. The Terms and Conditions
2  say this:

> ***MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans.*** MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.

(Emphasis added.)

A "beneficiary" is defined as "one designated to benefit from an appointment, disposition, or assignment . . . or to receive something as a result of a legal arrangement or instrument." BLACK'S LAW DICTIONARY 165 (8th ed. 2004). But it is obvious from the MERS' "Terms and Conditions" that MERS is not a beneficiary as it has no rights whatsoever to any payments, to any servicing rights, or to any of the properties secured by the loans. To reverse an old adage, if it doesn't walk like a duck, talk like a duck, and quack like a duck, then it's not a duck.[27]

But more importantly, even if MERS is the nominee of the beneficiary, or the motion was brought by the beneficiary, that mere allegation is not sufficient to confer standing.

Under Nevada law a negotiable promissory note[28] is enforceable by: (1) the holder[29] of the

---

[26]"MERS Terms and Conditions" filed in *Dart* (#08-11007) at ¶ 2, Docket #47-7. (Emphasis added.)

[27]The court is aware of at least one case in this district, *Elias v. Homeeq Serv.*, 2009 WL 481270 (D. Nev. 2009)(slip copy), in which MERS has been found to have standing to foreclose as a nominee beneficiary of a deed of trust. While the court in *Elias* found the deeds of trust, notices of foreclosure, and the trustee's deed upon sale established MERS' standing, there is nothing in the opinion to suggest that MERS lacked possession of the notes.

[28]The court assumes, without deciding, that the notes in question are negotiable instruments. If they aren't, then custom and practice will treat them as if they are. For example,

note, or (2) a nonholder in possession of the note who has the rights of a holder.[30] Thus if MERS is not the holder of the note, then to enforce it MERS must be a transferee in possession who is entitled to the rights of a holder or have authority under state law to act for the holder. Simply being a beneficiary or having an assignment of a deed of trust is not enough to be entitled to foreclose on a deed of trust. For there to be a valid assignment for purposes of foreclosure both the note and the deed of trust must be assigned. A mortgage loan consists of a promissory note and a security instrument, typically a mortgage or a deed of trust.[31] When the note is split from the deed of trust, "the note becomes, as a practical matter, unsecured." RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. a (1997). A person holding only a note lacks the power to foreclose because it lacks the security, and a person holding only a deed of trust suffers no default because only the holder of the note is entitled to payment on it. *See* RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. e (1997). "Where the mortgagee has 'transferred' only the mortgage, the transaction is a nullity and his 'assignee,' having received no interest in the underlying debt or obligation, has a worthless piece of paper." 4 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 37.27[2] (2000).

Given this, it is troubling that MERS apparently believes that in states such as Nevada

---

under N.R.S. § 104.9012(tt), Nevada's Article 9, an "instrument" is defined as a negotiable instrument, "or any other writing that evidences a right to the payment of a monetary obligation . . . and is of a type that in ordinary course of business is transferred by delivery with any necessary endorsement or assignment." "Instruments" are thus defined somewhat broadly according to ordinary business practices.

[29]A "holder" is the person in possession of a negotiable instrument that is payable either to a bearer or to an identified person who has possession. N.R.S. § 104.1201(u)

[30]N.R.S. § 104.3301. A negotiable promissory is also enforceable under N.R.S. § 104.3301(c) by a nonholder of a note that has been stolen, destroyed, or paid by mistake. There has been no allegation in this case making this provision relevant here.

[31]Nevada recognizes that parties may secure the performance of an obligation or the payment of a debt by means of a deed of trust. N.R.S. § 107.020. The maker of the note is the trustor and the payee is the beneficiary.

possession of the note is not required if no deficiency is sought.[32] Hultman says this in his declaration:

> In non-judicial foreclosure states, if the Member chooses to have MERS foreclose under the power of sale provision in the security instrument and is not seeking a deficiency judgment, then the note does not need to be in the possession of the Member's MERS Certifying Officer when commencing the foreclosure action; provided, however, that under no circumstances may the Member allege that the note is in MERS possession and seek enforcement of the note unless MERS actually possesses the note.[33]

This distinction between judicial and non-judicial foreclosure states, or deficiency and non-deficiency ones, is one which MERS has designed out of whole cloth. In order to foreclose, MERS must establish there has been a sufficient transfer of both the note and deed of trust, or that it has authority under state law to act for the note's holder. *See* RESTATEMENT (THIRD) OF PROPERTY (MORTGAGES) § 5.4 cmt. c (1997). *See also*, *In re Vargas*, 396 B.R. 511, 516-17 (Bankr. C.D. Calif. 2008).

### *DOES MERS HAVE STANDING AS THE AGENT OF THE MEMBER OR IN ITS OWN RIGHT?*

The mere statement that the movant is a member of MERS does nothing but lay the groundwork for agency. In order to enforce rights as the agent of the holder, MERS must establish that its principal is entitled to enforce the note. Motions brought by MERS as nominee could meet the threshold test of standing, and MERS might be the "real party in interest" under FED. R. CIV. P. 17, if MERS is the actual nominee of the present Member who is entitled to enforce the note. Under Rule 17 a party in interest is any party to whom the relevant substantive law grants a cause of action. *U-Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1038 (9th Cir. 1986). Counsel for MERS acknowledged during oral argument that MERS is the agent for its

---

[32] Despite MERS' contention that the mere status as a beneficiary or nominee of a beneficiary is sufficient, MERS has tried to withdraw most of its motions because it could not ascertain that its Member had possession of the note when the motion was filed. *See* Hultman Declaration at p. 4, Docket #74; Docket #49 at p.11; and Docket #47, Exhibit D in *Dart*).

[33] Hultman Declaration, Docket #74, ¶ 4.

1  members only.[34] If a note has been transferred to a non-member, then MERS cannot act as the
2  agent. One cannot assume that just because MERS was named as the initial nominee in the deed
3  of trust that it still retains that relationship with the holder of the note. Moreover, by virtue of the
4  fact that some of the motions were filed even after the note was transferred out of the MERS
5  system, it is apparent that MERS has not tracked (or been appropriately advised of) the
6  assignment of the note to a non-member. For example in *Moore*,[35] MERS brought a motion to
7  lift-stay in February 2008 as nominee for Quick Loan Funding.[36] Later, in July 2008, an amended
8  lift-stay motion was brought by GRP Loan in *Moore*.[37] Exhibit C to the amended motion shows
9  that an assignment of the deed of trust was made from MERS to GRP on February 27, 2007,
10 which pre-dates MERS' lift-stay motion.[38] Similarly, in *Mercado*,[39] a matter which was added to
11 the argument calendar after the order for joint briefing,[40] MERS brought a motion to lift-stay as
12 nominee for MILA.[41] However, as seen in a later stipulation to sell the property,[42] Homecomings
13 Financial Network was the entity who was entitled to enforce the note.
14    In the remaining cases, MERS has attempted to establish its standing through the
15 affidavits of "Certifying Officials." Under the Membership Agreement, MERS provides
16 Members a corporate resolution designating one or more employees of the Member a MERS
17 Certifying Officer. This resolution, among other things, appoints the individual as an assistant

---

[34]*See also*, Docket #74, Hultman Declaration at ¶ 4.

[35]*Moore (*#07-16333).

[36]Docket #37 in *Moore*.

[37]Docket #59 in *Moore*.

[38]Docket #59, Exhibit C.

[39]#07-17690.

[40]Docket #44 in *Mercado*.

[41]Docket #28 in *Mercado*.

[42]Docket # 50, Exhibit 1 in *Mercado*.

secretary and vice president of MERS. They are given the power to "take any and all actions and execute all documents necessary to protect the interest of the Member, the beneficial owner of such mortgage loan, or MERS in any bankruptcy proceeding regarding a loan registered on the MERS System that is shown to be registered to the Member."[43] There appears to be absolutely no requirement that these Certifying Officers have any knowledge of the loan in question. From the MERS website it appears that the "Certifying Official" (the person who works for the holder of the note) is not an employee of the servicer either.[44]

In *Hawkins* the motion was brought by MERS "solely as nominee for Fremont Investment & Loan, its successors and/or assigns."[45] However, in his affidavit at ¶ 6, Victor Parisi[46] states that the beneficial ownership interest in the *Hawkins* note was sold by Fremont Investment & Loan and ownership was transferred by endorsement and delivery. While the affidavit goes on to the say that MERS was a holder at the time the motion was filed, it is obvious that MERS has no rights to bring the motion as nominee of Fremont given that Fremont no longer had any interest in the note.

Similarly, in *Ziegler*[47] the motion was brought by MERS "solely as nominee for Meridias Capital, Inc., its successors and/or assigns."[48] Yet the affidavit of Stacey Kranz at ¶ 6 states that "the beneficial ownership interest in the Zeigler Note was sold by Meridias and ownership was transferred by endorsement and delivery. The Zeigler Note was subsequently endorsed in

---

[43] Form Corporate Resolution, attached to Exhibit C to the Hultman Declaration, filed in *Dart*, #08-11007.

[44] The website says that "[a]fter your mortgage loan closed, your lender more than likely outsourced the job of managing your loan to another company called a SERVICER. This is the company you call when you have questions about your loan."

[45] Docket #28 in #07-13593.

[46] Docket #49, Exhibit C, and Docket #56, Exhibit A in *Mitchell*.

[47] #08-10718.

[48] #08-10718, Docket #21.

blank."[49] An additional affidavit was filed by German Florez, the president of Meridias, who disavowed "any interest in the Note and Deed of Trust regarding the Subject Property."[50]

A slightly different defect exists *Dart*. That motion was brought by MERS "solely as nominee for Centralbanc Mortgage, its successors and/or assigns."[51] However, Ms. Mech, as Certifying Officer, testifies that the note is held by Bank of America, who is listed as the current servicer, and who "had (or has) physical possession of the note in its files."[52] In a previous affidavit, Ms. Mech testified that "the beneficial ownership interest in the Dart Note was sold by Centralbanc and ownership was transferred by endorsement and delivery. The Dart Note was subsequently endorsed in blank."[53]

So while in each of these cases MERS may really be contending that is it entitled to enforce the note in its own right through possession, or as the nominee of the transferee, the motion was brought instead as nominee of an entity that no longer has any ownership interest in the note.

Additionally, each motion has been brought in the name of the lender and "its successors and/or assigns." Under FED. R. CIV. P. 17 an action must be prosecuted in the name of the real party in interest. "As a general rule, a person who is an attorney-in-fact or an agent solely for the purpose of bringing suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of his principal rather than in his own name." 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1553 (2d ed. 1990). An agent with ownership interest in the subject matter of the suit is a real party in interest. *Id.* There is no evidence, however, of an agency relationship here or that MERS has any ownership interest

---

[49] Docket #56, Exhibit C-1 in *Mitchell*.

[50] Docket #56, Exhibit C-3 in *Mitchell*.

[51] Docket #25 in *Dart* (#08-11007).

[52] Docket #81-1 at ¶ 4 in *Mitchell*.

[53] Docket #49-1 at ¶ 6 in *Mitchell*.

making it the real party in interest under Rule 17.

### OTHER EVIDENCE PROBLEMS

Even if the defects were ones of pure pleading,[54] the testimony in these cases is neither competent nor admissible. Each of the affiants in the remaining cases testify as follows:

> I have been appointed as Assistant Secretary of Mortgage Electronic Registration Systems., Inc. ("MERS") under a Corporate Resolution that was executed on [date]. I make this affidavit in support of Movant. I have reviewed the loan file relating to the above-referenced matter, and if called upon to testify as to the facts set forth in this Affidavit, I could and would testify competently based upon my review.

The affiant then purports to set forth the history of the negotiation and transfer of the note and who now has possession.[55]

First, this testimony is not admissible because there is no evidence that the affiants are competent witnesses. The Federal Rules of Evidence apply in bankruptcy[56] yet there is no evidence that these Certifying Officers have adequate personal knowledge of the facts under FED. R. EVID. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").[57]

---

[54] For example, Mr. Hultman has stated that a number of motions were withdrawn because they identified MERS as the payee under the note. Hultman Declaration, Docket #74 in *Mitchell*.

[55] For example Ms. Mech testifies in her affidavit (Docket # 81-1) that at the time MERS filed the motion to lift stay in *Dart*:

> Bank or America, who is listed as the current servicer on the Dart (MIN: 100233602006080675) loan registered on the MERS System, had (and has) physical possession of the original notes in its files. MERS in turn has possession of those documents through a MERS Certifying Officer who is an employee of the member listed as servicer on the MERS System.

[56] FED. R. BANKR. P. 9017.

[57] Stacey Kranz, "an Assistant Secretary of [MERS] under a Corporate Resolution" testifies in *Zeigler* (#08-10718) that "MERS was in physical possession of the Zeigler Note at the time MERS filed the motion . . . ."(Docket #73 in *Zeigler* #08-10718). Mr. Victor Parsi, similarly appointed, testifies in *Hawkins* that "MERS was a holder of the Hawkins Note at the time the

Ms. Mech's bald assertion that she has "reviewed the loan file" is inadequate to show that she is personally knowledgeable of the facts. Neither are the purported notes and deeds admissible. For business records to be admissible as an exception from the hearsay rule under FED. R. EVID. 803(6) there must be a showing that the records were:

> (1) made at or near the time by, or from information transmitted by, a person with knowledge;
> (2) made pursuant to a regular practice of the business activity;
> (3) kept in the course of regularly conducted business activity; and
> (4) the source, method, or circumstances of preparation must not indicate lack of trustworthiness.

These elements must be established either by the testimony of the custodian or other qualified witness or must meet certification requirements. *See In re Vee Vinhnee*, 336 B.R. 437, 444 (B.A.P. 9th Cir. 2005).

### *CONCLUSION*

The lift-stay motions in *Dart* and *Hawkins* are denied. MERS may not enforce the notes as the alleged beneficiary. While MERS may have standing to prosecute the motion in the name of its Member as a nominee, there is no evidence that the named nominee is entitled to enforce the note or that MERS is the agent of the note's holder. Indeed, the evidence is to the contrary, the note has been sold, and the named nominee no longer has any interest in the note.

**IT IS SO ORDERED.**

---

Motion for Relief was filed in MERS name. . . ."(Docket #56-2 filed in *Mitchell*.)

1  Copies noticed through ECF to:

2  MICHELLE L. ABRAMS
JEREMY T BERGSTROM
3  RAYMOND A. CARDOZO
LAURA L. FRITZ
4  THOMAS J. HOLTHUS
EDDIE R. JIMENEZ
5  LENARD E. SCHWARTZER
ELSIE L. SECOQUIAN
6  U.S. TRUSTEE - LV

7  Copies noticed through BNC to:

8  JOSHUA & STEPHANIE MITCHELL
1081 NORTH CLIFF CREEK
9  MERIDAN, IO 83642

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28